Appellant, Mr. Magid for the Appellant, Mr. Kimmelman for the Appellee. Good afternoon, Your Honors. May it please the Court, I'm Chip Magid on behalf of the Government of Belize. If an executive or a member of the executive branch of the United States were to enter into an agreement with a foreign entity and provide that rather than payment in money for the services or goods that that foreign entity might provide, that rather that executive would purport to relieve the foreign entity of an obligation to pay otherwise applicable U.S. taxes, and if in that agreement there happened to be an arbitration provision and that an arbitration award was granted saying that monies were owed for those U.S. taxes that had been promised to be alleviated or abated, I think it would be difficult to believe that either Congress would stand for that under Article 1, Section 8 of the Constitution or that this Court would stand for such an arbitration award. Yet that's precisely the situation we face here today. We have a situation in which the government, not the Government of Belize, but a former Prime Minister of the Government of Belize in secret enters into a deal and provides that taxes will be abated and duties will be abated, something that he cannot do under Belize's system of law. Like us, they have separation of powers, and only the Belize legislature has that authority. And the evidence that we have about that is the Caribbean Court of Justice decision, or do we have any other evidence? Yes, we submitted a pair of affidavits, Your Honor, attesting to the invalidity under Belize's law of those agreements. The Caribbean Court of Justice opinion doesn't deal with our specific case, but yes, Your Honor, it deals with the parallel circumstances with other parties. The affidavits you're talking about, do they make the additional point you've just made, which is it also covers an included arbitration clause, or do they only stand for the proposition that the Attorney General or the President don't have authority to make these kind of tax decisions? Your Honor, it really stands for two propositions. One is that the President or any executive, including the Attorney General, an executive department employee, do not have the authority to make tax deals, abate taxes. No, that wasn't the question. The question was whether the lack of authority extends to authority to enter into an arbitration agreement. Is there anything in the record that suggests the Prime Minister or the others who entered in this didn't have authority to sign an arbitration agreement? That's the question. And I understand your question, Judge Tatel and Judge Carlin. I understood the question. I don't believe there's anything in the record that says specifically that under no circumstances could an executive of Belize enter into an agreement. I'm sorry. And, in fact, this issue was decided by the arbitration panel, right? The arbitration panel found that there was authority to enter into an arbitration agreement. It did, Your Honor. Our position, however, is that that is not a question for the arbitration panel. If there is no valid agreement. But you just told me this. You have nothing in the record to indicate that they did not have authority to sign the arbitration agreement. Under the law of the FSIA, unlike the FAA, upon which Judge Leon relied, there is nothing that it's very clear that the agreement is taken as a whole. There is no severability under the FSIA. Well, but the statute only focuses on this. I mean, this is just a question of statutory interpretation. That is, you know, the only thing you need for FSIA jurisdiction is an agreement to arbitrate. And if an agreement to arbitrate, if they had authority to enter into an agreement to arbitrate, and you don't deny that or you don't find anything in the record, I guess I don't see how that affects FSIA jurisdiction. With great respect, Judge Tittle, the arbitration provision in the FSIA, and we're looking at 28 U.S.C. 1605A6, provides first in the first paragraph of A6 that there is no immunity from the jurisdiction of the courts of the United States if there is an action brought to enforce, and I'm paraphrasing here, or confirm, quote, an agreement made by the foreign state. But there is no agreement made by the foreign state. That is precisely our point. And unlike the Federal Arbitration Act. But there is. They agreed to arbitration. You say the agreement they signed, which you say they had authority to do, includes an arbitration agreement, an arbitration provision, does it? No, Your Honor. There are two separate questions there. One is, would it be possible under some circumstance to enter into an arbitration agreement? So if the executive says we're going to buy light bulbs for the executive office building of a presidential palace, there perhaps could be an arbitration provision. But where the executive has no authority to enter into an agreement, the entire agreement, including the arbitration provision, is void. And the error of the court below was in looking not to the FSIA, but rather in looking to the Federal Arbitration Act to bring in this notion of severability that you look at the arbitration provision itself and see whether there was authority to enter into that. Under the FSIA, that's completely. What the case entirely turns on, then, is the question of whether the arbitration agreement can be separately construed, validated, enforced, independent of the underlying agreement under the FSIA. That is a critical question, Your Honor, yes. That is the critical question, isn't it? Well, I would say that there are others, including the fact that under the New York Convention, this is not a commercial contract which involves subpart B, and I'm talking capital B, under 1605A6. But the sovereign immunity question, actually, when I think about this, the statute has to be an agreement to submit to arbitration, right? That's what you just told me. It has to be an agreement to submit to arbitration, right? It has to be an agreement made by the foreign state. Yes. Yes. To submit to arbitration. No, it's talking about enforcing the entire agreement. With or for the benefit of a private party to submit to arbitration, or is that right? You are correct, Your Honor. Okay. So the question is, your question is whether the foreign state, the people who signed for the foreign state, had the authority to sign an agreement submitting something to arbitration. That's your argument? It is, Your Honor. Okay. Now, Judge Tatel asked you whether there was sort of contrary authority in the arbitrator's decision, and you suggested that there was, but all I find in the arbitrator's decision is that the Attorney General and the President have authority to make decisions on behalf of the government. It doesn't say whether they have authority to make this kind of decision or whether the government can make this kind of decision. That's correct, Your Honor. So is there anything in the record at all on the question that's actually before us, which is whether there's authority to enter into an arbitration agreement? I don't believe there is any separate authority, but what the authority is is that an executive cannot enter into any agreement, arbitration agreement, or otherwise. Now, you're just saying this. I mean, you don't have an affidavit of a constitutional expert about Belize or anything else on that subject. I don't, Your Honor, for the simple reason that there could be circumstances in which an executive, as I said, could enter into an agreement that contained an arbitration provision. Right, but your position is that the executive, and it's not an unreasonable position. Your position is that the executive can't enter into an agreement to arbitrate an agreement that it never had the authority to enter into in the first place. That's correct. Let me ask you, so what about paragraph 55 of the Caribbean Court of Justice's decision, where the Caribbean Court says that they had the authority to enter into the agreement, but then they say at the bottom of appendix 620, the latter, there's also the fact here that the state treated with indifference to arbitral process. That is, the state didn't participate in the arbitration. It says, the latter was contractually bound by the warranties of the former, provided the implementation of those warranties were not a law, et cetera. Then it says, the agreement to arbitrate was a freestanding agreement, separable from the remainder of the deed, and it's enforced in it that the government approached its obligations under that agreement in the way it did. Is this a statement that had they challenged the arbitration agreement rather than it not showing up, that they might have a different claim? You know, I hate to speak for the Caribbean Court of Justice. Yes, what's your interpretation of it? My interpretation is not that it's really speaking to the specific set of agreements for the CCJ in that case, but that ‑‑ And that's not this agreement? I'm sorry? That wasn't this agreement? That was? Was that this agreement or not? I don't believe it was, Your Honor. It's a different agreement? Yes, Your Honor. I see. Let me ask one more sort of clean-up question, which I don't quite get. Of course, Your Honor. In the agreement, the telecommunications agreement, appendix 147, it says the government irrevocably and unconditionally waives any right of immunity. Right. Why aren't we looking at that aspect of sovereign immunity, of the Foreign Sovereign Immunities Act, the waiver of sovereign immunity, rather than the arbitration provision? Right. Again, because there's no power to do that. We have what we believe was a corrupt prime minister in cahoots with Ward Ashcroft and his entities coming up with a sweetheart deal for Ward Ashcroft. You're going beyond what you have to go when you say that. We don't have to believe that there's sweetheart deals or that he's corrupt in any other fashion. Your whole point is whether he had the authority by law to enter the agreement. Absolutely, Your Honor. Even if it were otherwise as pure as driven snow or slush or whatever, your point is that he didn't have the authority. It is, Your Honor. And does that include the authority to waive sovereign immunity? Absolutely, Your Honor. Otherwise, we'd have the same situation as in the hypothetical I gave you. You have a rogue employee who, without authority, purports to bind the sovereign, and he cannot do that in the case of Lee's. And in my hypothetical, it could not be done on the part of the United States. Further questions from the panel? No? I'll hear from the other side. Good afternoon, Your Honors. Louis Kimmelman on behalf of the Appellee Police Social Development Limited. Your Honors, the contract that was described to the court is not the contract in this record. The contract in this record that has an arbitration clause that the government never challenged ever in the district court or in its briefs before your court specifically. Well, they challenged the whole agreement. They did, Your Honor. They challenged the whole agreement. That includes the arbitration agreement. No, Your Honor, it doesn't. It doesn't? Because when you look at the record. Is the arbitration agreement another document? The arbitration agreement is a severable contract. Is it another document? It's within the document, but as a matter of U.S. law. Signed by the same people or purportedly entered by the same officials, right? Yes, Your Honor. It's signed by the two highest officials of Belize, the Prime Minister and the Attorney General. Did they have the authority to change tax laws in Belize? Your Honor, that's not what the agreement's about. The agreement's about, and that's what. . . Well, you brought them up. I'm sorry? You brought them up, and you told me what high officials there were. I'm trying to find out how high the officials are. Well, they're the highest officials. They changed the tax laws. They're the highest officials in the government, and this is agreement. . . In the executive. I'm sorry? In the executive. In the executive branch, correct. Does Belize have separation of power? It does. It has a legislature, Your Honor. And this contract is an accommodation that was made at the request of the government. The government was selling real estate to a private party. Was it made at the request of the legislature? I'm sorry? Was it made at the request of the legislature or the executive branch? That's not in the record, Your Honor. I believe it was a request by the government, by the executive, which the executive typically does, is to buy and sell assets. Let me see if I can make a sharpened hypothetical, a sharpening of the one raised by opposing counsel. Imagine that the president, in order to get good telecommunications in the United States, the president of the United States entered into a contract with a foreign telecommunications company, which said, we want you to do this, and in exchange for that,  and because you are from a country that doesn't have the same anti-discrimination laws as you do, I'm suspending the Title VII, and you should feel free to discriminate against any American employee in the United States on the basis of race, sex, religion, et cetera. And we're going to have an arbitration clause, which says that that issue can be arbitrated, that the contract as a whole, including its validity, can be arbitrated by, I don't know, some panel in Europe, the London Court of International Affairs. Exactly. Would that, would the president have valid authority, would that be a contract entered into by the foreign state, the United States? Well, Your Honor, to answer that question, I would have to look to the stat, and just to answer, to bring it down to this case, Your Honor asked about the CCJ decision, and I'd like to refer Your Honor to that. No, no, I need you to get this one. In fact, let's say it further, the contract further says not only does Title VII doesn't apply, but the Constitution of the United States doesn't apply. You should feel free to violate the Constitution of the United States, if you wish, in your treatment of employees. Now, does the president have authority to enter into a contract like that, including the arbitration part of it? Well, Your Honor, if the contract, like this one, had representations and warranties that say the parties of both sides. You're fighting the hypothetical. I'm sorry? You're fighting the hypothetical. No, I'm not, Your Honor. I know for a fact that the Supreme Court has said in one case that Title VII specifically does not have extraterritorial effect. I'm saying it's not going to be extraterritorial. It's going to be in the United States. In the United States? Yes. In other words, they enter into an agreement that says, the President of the United States says, we need your telecommunications company badly. We will allow you to violate the Constitution of the United States to get this job done. In fact, I don't know, add in the takings clause, and you can seize any property in the United States that you want without just compensation. Now, and we're going to have an arbitration clause, and I'm entering into an arbitration clause allowing arbitrators to decide the validity of my, the President's decision that you can violate the Constitution. That can't possibly be something that would be an agreement made by the United States, right? That would be an invalid agreement under any theory. I believe the contract as a whole, you're correct, would be invalid, unenforceable. Including the agreement to arbitrate that point, right? Well, I don't think the agreement to arbitrate would necessarily be invalid in your hypothetical. My hypothetical is that the President agrees to arbitrate the constitutionality of actions against American citizens. That that's not to be decided by the courts of the United States, but to be decided by the London Tribunal. Correct, Your Honor. And you think that would be valid? Well, Your Honor, under Mitsubishi, it's my understanding that as of today, the Supreme Court has said that absent Congress stating specifically in a statute that a subject matter is not subject to arbitration, it is arbitrable. Because as the Court knows, we've gone through the litany of cases from antitrust to securities law violations to RICO violations, and all of those, although they involve very important issues, including labor law issues, unless Congress says this is not arbitrable. Did any of them involve the question of whether an agreement that was otherwise ultra vires could include an enforceable arbitration? No, Your Honor, they did not. And that's the question before us. But, Your Honor, it's not. Because let me just go back. It's not? Chief Judge Garland, you asked about the CCJ opinion. It's in the record. It's not about this contract. It's not about these specific parties. It's not about this arbitration. But I direct your attention. You called us to paragraph 55. But I direct your attention to paragraph 38, which is on the record on page 615. This is what the CCJ said about a challenge to a different contract where the argument was made by the government that the Prime Minister and the Attorney General did not have the authority to enter into the contract. And let me just read it. This is the CCJ, the highest court. Which paragraph? Paragraph 38 at the top of the page. We agree that the minister does indeed possess wide prerogative powers to enter into agreements. The executive may do so even when those agreements require legislative approval before they can become binding on the state. This was also the opinion of the Eastern Caribbean Court of Appeal in the St. Francois, an authority cited by the tribunal, meaning the arbitral tribunal. The judge's focus, however, ought logically to have extended beyond the issue of whether it was lawful to make the premises, the promises, I'm sorry, the making of a government contract may be a matter quite distinct from its enforceability against the state, as the Francois case also demonstrates, close quote. The CCJ decision did not determine whether any contract entered into by the state was legal or illegal. The only issue before it was under the equivalent of the New York Convention was that arbitration award in favor of the private party and against the state wasn't enforceable as a matter of Belize public policy. And the court here concluded that as a matter of Belize public policy, the award was not enforceable. But its own language confirms that the executive in Belize, as in other states, has the right prerogative powers to enter into agreements even when those agreements may require legislative approval to be enforced. Enforcement is a different issue from the issue of the legality of the contract. And so the very authority that the government relies on here, in fact, undermines its position. The claim in this case is that the accommodation agreement is void ab initio. It's illegal. It's against Belize law. However, the record, however, that issue under U.S. law is clearly an issue for the arbitral tribunal. And Belize never challenged the enforceability or the legality of the arbitration clause, which was the basis upon which a tribunal ruled. What position did it – when you first stood up here, you made a statement about Belize's position in the district court here. What was its position there? It didn't participate in the arbitration at all. Correct. So what was its position in the district court with respect to the arbitration clause? From the beginning of the proceedings in federal court, in the lower court, their position was the accommodation agreement is illegal, it is contrary to Belize law and public policy, and it is void ab initio. There is nothing in its motion to dismiss or in its opposition to our petition to confirm that says specifically that anyone did not have authority to enter into the arbitration agreement, which was the basis for the tribunal's jurisdiction. And in fact, that argument does not surface until the course of the briefing before this court. And so when you look at the district court's decision, which frankly addresses every point that was made by the government, you won't find this argument because it wasn't made. In fact, an argument that was made that the district court dealt with was an argument called – the argument was that we – Did you – Lackstanding. In the district court, in response to Belize's argument that this contract was invalid, did you respond, perhaps so, but the question is, the effect of the arbitration clause? Yes, Your Honor. And did Belize respond to that? They – their response back was that the agreement as a whole is illegal and void ab initio. They never – they never met us, and there is no evidence in the record as to any official in Belize not having authority to sign – to enter into an arbitration clause. As a matter of fact, in the record – and this is interesting – if you take a look at page 576 to 580, there's a chart. 576 to 580 is what? It's – it's the record on appeal. 576 to 580. This – this is the last filing that was made by the government before the district court, after the case was remanded from this court pursuant to the mandamus decision. And you'll see on 576 through 580, there's a chart. And what the chart – Is there a JA page? Oh, yeah. So that's – that's what – that's the JA page. It's 0576 at the bottom through 0580. Okay. And this is a chart. This is – this is the government's submission to the district court. It lists every item on the left side and the reason that it's allegedly illegal next to it, and then an explanation for a column. And you'll see that although this contract has many provisions, the arbitration clause is not mentioned anywhere in this chart. There is no suggestion that there is anything unauthorized, illegal, improper, or invalid about the arbitration clause. And – and one thing is – I think they're still arguing past each other, and one of you is right or wrong, one of you isn't, maybe you're both wrong, I don't know, but I think their position would be that if they have demonstrated the invalidity of the agreement which contains the arbitration agreement, then that by itself would – in and of itself would take out the arbitration agreement along with it. So that what you're saying about the chart is not material to whether they have raised the issue that's going to govern the case, is it? Your Honor, that – I think that is what they are arguing, but I – my – our position is that's not the law. I understand that. The law is to the contrary. And it's to the contrary in two respects. I thought your argument was they didn't argue this in the district court. I'm sorry? Didn't – didn't you just tell me – I thought your argument was they didn't argue this in the district court. Yes. You just said they didn't raise it in the district court. Correct. The demonstration of that was that they didn't have a specific element of their chart that addressed the arbitration agreement. However, if their argument is that the arbitration agreement is invalid because the containing of the agreement is invalid, then they did raise it in the district court, didn't they? No, Your Honor, because – That doesn't mean you lose if you say yes to that. No, I know. I understand your – I understand. That's their argument, that if the agreement is illegal, the arbitration – but that's not the law. But they raised that in the district court. That's the only argument. My point was they did not attack or challenge the arbitration clause specifically. But if they're correct that it falls with the agreement, then they didn't have to raise it separately. If that were true, that's right. But what we did – So your point is not based on they're not raising it below. It's simply a point that they're wrong, is your argument. Well, they're wrong, but because they're wrong and the law is clear that you do have to challenge it, the fact that they didn't challenge it specifically – But that's a different question. Their position is they did challenge it because they pressed the attack to the whole agreement. Understood. Now, they're right or wrong on that, but that doesn't mean they didn't raise the issue. They raised it. They just didn't raise it in your form. They raised it in their form. Yes. They raised it in the form which we believe is contrary to what's appropriate. Okay. But there are two separate issues here. One is the sovereign immunity issue. And the point I wanted to make is that 1605a6 is not about the agreement as a whole. The exception to immunity is very specific. Congress was very specific about this, and this is an amendment that was made in 1988 to the FSIA. It's after the statute had been enforced for a number of years. All that's required is an agreement to submit to arbitration. That's the only thing that has to be shown, and that the agreement to submit to arbitration is subject to a treaty calling for the enforcement, for the recognition and enforcement of arbitration awards. Well, isn't it implicit that that would have to be a valid arbitration agreement? I think it has to be a valid arbitration agreement. Right. But the required showing that we were required to make was that there was an arbitration agreement signed by the government, entered into by the government, covered by the New York Convention, and we did that. And their burden under the law of this circuit is that if they're going to challenge that exception, that they have to come forward with evidence. And this goes to the point I was making before. They didn't come forward with any evidence that there was the agreement to arbitrate as required by 1605A6 was in any way improper or invalid or unenforceable. Can I just a clean-up question once again? Why is there no reliance on the waiver of sovereign immunity in the agreement? Because, Your Honor, the waiver of sovereign immunity in the agreement is a waiver of government contracted in 2005. And as the Court may recall, the monetary portion of the award was assigned after the award was rendered. And so we think that provision is significant to the commercial nature of the transaction, but it's not the basis on which we asserted the exception to immunity in this Court. Further questions from the bench? Thank you. Thank you, Your Honor. Time left? No. All right. We'll give you two minutes. I'd like to give everybody else. Thank you, Your Honor. Chief Judge Garland, I think you really hit it on the nail on the head when you gave your hypothetical, which was a vast improvement on my hypothetical. Essentially what BSDL here is asking is to say, even if that were the case, as long as there's an arbitration provision and an award from an arbitratory body, that a district court in the United States is essentially bound to accept that agreement with the possible exception of a couple of the enumerated. I take their argument to be that there are some things that somebody can agree to arbitrate, even if they don't have authority, some that they can't, and what's missing. And maybe you're right about this, but you didn't come forward with any specific evidence about authority to enter into arbitration agreements. Well, I think the Young and the Gandhi affidavits, which we provided, explain. I'm going to view it more negative versus positive here. They show that where legislative act is required, as in the area of taxation, there is no authority. The executive, on the other hand, would not necessarily need legislative approval to go out and buy gas for a fleet of trucks or something like that. So there are certain things that the executive could do. But it's plain here, when we're talking about tax abatement and abatement of duties, that only the legislature can do that. Now, Mr. Kimmelman tries to draw a distinction and says, well, the CCJ says that the executive can enter into that agreement even if the legislature subsequently has to approve it before it becomes valid. That argument becomes a little bit circular. Yes, it's possible just as our executive branch can enter into treaties and the rest that require congressional approval before Congress approves them. But that doesn't mean that they're valid until and unless Congress goes ahead and approves them. That's the problem here. There is no valid agreement, and therefore there is no valid agreement to arbitrate. And there is no act of a foreign state. As we made very clear, unless there's actual authority, Knuth makes this point from the Ninth Circuit, unless there's actual authority to enter into that agreement, which plainly there is not here, there is no act by the government. And, therefore, the very first sentence of 1605A6 doesn't apply. There is no agreement made by the foreign state. It matters not whether within that there's an arbitration clause or not. Further questions? All right. We'll take the matter under submission. Thanks to both sides. Thank you very much, Your Honors.
judges: Garland, Tatel, Sentelle